FILED IN DISTRICT COURT
OKLAHOMA COUNTY

JAN - 2 2014

TIM RHODES
COURT CLERK
32

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

1. ANGELA YETTER, and )
2. MARK BLAKELY )
   )
   Plaintiffs, )
   ) Case No. CJ -2014- 20
v. )
   ) Attorney Lien Claimed
1. FARMERS INSURANCE COMPANY, ) Jury Demanded
   INC. )
   )
   Defendant. )

THOMAS E. PRINCE

## PETITION

In support of their lawsuit, plaintiffs state as follows:

1. Plaintiffs bring this lawsuit in an effort to help protect Oklahoma and U.S. citizens from mistreatment by property and casualty insurers with respect to first party property damage claims and to enforce their own rights under Oklahoma law to recover benefits due according to their insurance policy with the Defendant.

### Parties

2. Plaintiffs Angela Yetter and Mark Blakely are husband and wife. They reside in Oklahoma City, State of Oklahoma.

3. Defendant Farmers Insurance Company, Inc., is a foreign, for-profit insurance corporation formed and incorporated in the State of Kansas with its principal place of business located in Shawnee Mission, Kansas (herein referred to as "Farmers").

4. Defendant Farmers is licensed to conduct business in the State of Oklahoma

Page 1 of 9
Complaint
*Yetter and Blakely vs. Farmers Ins. Co., Inc.*


DEFENDANT'S EXHIBIT 1

and may be served with process through the Okla. Dept. of Insurance.

5. This action is not related to any other case filed in this court.

6. Plaintiffs' cause of action is one for breach of contract, deceit, and breach of the duty of good faith and fair dealing.

7. At all times material hereto Plaintiffs owned residential property located at 9200 S. Villa Ave., Oklahoma City, Oklahoma, 73159, (herein plaintiffs' "Home").

8. At all times material, Plaintiffs' Home was insured pursuant to the terms and conditions of an insurance policy issued by Defendant Farmers, i.e., Policy Number 0940548518 (herein the "Policy").

9. The Policy is an all risk policy.

10. The Policy provides coverage for any and all risks that result in "direct physical loss or damage" to Plaintiffs' dwelling, structures and personal property, unless the particular loss or damage is reasonably and clearly excluded or limited by specific policy language.

11. More importantly, the Policy provides coverage for any "Marring" or "movement, settling, cracking, bulging, shrinking, heaving or expanding . . . caused by . . . explosion resulting from combustion".

12. Thus, by its terms, the Policy requires immediate, fair and full payment to an insured for explosion related loss or damage - - including "Marring" or any damage or loss relative to "movement, settling, cracking, bulging, shrinking, heaving or expanding"

which necessarily "includes . . . but [is] not limited to [loss or damage to] foundations, foundation fill material, . . . slabs, . . . patios, walls, floors ceilings, roofs, roof structures, walks, driveways, . . . fences . . . or swimming pools".

13. Upon notice of a claim, the Policy requires Defendant Farmers to conduct a prompt investigation.

14. The terms of the Policy also requires Defendant to conduct a fair and reasonable investigation to discover all loss and damage to its insured's dwelling, structures, and personal property.

15. Pursuant to the Policy, Defendant has a fiduciary-like duty to be honest and forthright with the plaintiffs and plaintiffs' representative relative to all aspects of any claim made.

16. Pursuant to the Policy, Defendant's duty of good faith and fair dealing requires it to be honest and forthright with the plaintiffs about the meaning and/or effect of Policy terms.

17. Pursuant to the Policy, Defendant's duty of good faith and fair dealing requires it to be completely unbiased in its investigation of any claim.

18. Defendant's duty to be unbiased in its investigation requires that Defendant rely on only competent and independent inspectors and engineers when inspecting or evaluating a claim.

19. Defendants are required under the Policy and applicable claim handling

standards to look for and find coverage under the Policy whenever investigating or inspecting plaintiff's property.

20. And the Policy requires full, fair, and prompt payment for any loss or damage caused by a risk of loss unless specifically excluded or limited by the terms of the Policy.

21. On or about January 3, 2013, a natural gas explosion occurred in a residence two lots south of the Home.

22. The explosion destroyed the house in which it occurred.

23. And the explosion severely damaged many houses near it.

24. Plaintiffs' Home suffered loss and damage as a result of the explosion.

25. The explosion caused loss and damage to the interior and exterior of Plaintiffs' dwelling and structures.

26. Plaintiffs filed a claim pursuant to the Policy, i.e., Claim No. 8000907906-1-1 (herein the "Claim").

27. At all times material hereto, plaintiffs complied with the terms and conditions of the Policy issued by Defendant Farmers.

28. Defendant inspected the Home and on January 31, 2013, issued its adjustment of the Claim.

29. However, in arriving at the amount of Replacement Cost, Defendant undervalued, underestimated, and/or wrongfully omitted numerous elements of loss and/or

damage to various structures/parts of the Home.

30. Defendant Farmers and its agents were unreasonable in their investigation, evaluation, communication, and payment of policy benefits that are due and owing to the plaintiffs.

31. In making its conclusions about parts of the Home that were damaged or marred by the explosion and those that were not, Defendant unreasonably ignored evidence directly supporting the cause of damage.

32. For example, numerous cracks in the brick veneer of plaintiffs' Home were caused by the forces of the explosion.

33. However, Defendant wrongfully and without any justification concluded that such cracks had pre-existed the explosion.

34. Plaintiffs were aware that nearly all of the cracks in the brick veneer of the Home were not there prior to the explosion. However, after the blast forces hit the Home, plaintiffs' became aware of such damage to their Home.

35. Plaintiffs communicated clearly and repeatedly to Defendant's representatives their observations about the cause of damage to the brick veneer, and the lack of any "pre-existing damage."

36. Structural engineer Robert Zahl also provided a report that it was clear to him in his opinion as a structural engineer that portions of the brick veneer were damaged by the blast and explained the dynamic of how such damage occurs.

37. However, Defendant, without justification, ignored the plaintiffs' communication of their observations of the lack of damage to their home and their specific knowledge about blast related damage and engineer Zahl's assessment of blast damage.

38. Instead Defendant relied on supposition by its inspector that the cracks were pre-existing.

39. Thus, Defendant without justification excluded all of the brick veneer damage from its payment calculation.

40. Also, defendant informed Plaintiffs that no payment for damage to the brick veneer would be made because there had been prior repairs made to portions of the brick veneer.

41. While there were a number of spot repairs about the brick veneer made well before the explosion, those prior patch jobs made to the brick veneer were intact as of the date of the explosion. And when the blast forces hit the home, most if not all of those areas were damaged and now need repair again.

42. There is no provision in the Policy that allows Defendant to deny payment for parts of the Home simply because prior repairs were made to such parts.

43. And there is no provision in the Policy that allows Defendant to deny payment for all of the brick veneer damage about the home merely because a small portion of the brick veneer about the Home had been previously patched before the loss event.

44. Denying payment to the plaintiffs for such damage is a breach of the Policy,

and violates Defendant's duty of good faith and fair dealing because it is unreasonable to withhold payment based on such pretext.

45. And by ignoring firsthand accounts about the condition of the brick veneer both before and after the blast and instead relying on speculation is a breach of the duty of good faith and fair dealing.

46. Another instance of Defendant breaching its duty of good faith and fair dealing occurred with regard to damage to beams at the ceiling in the living room of the Home.

47. That is, the blast knocked beams out of place.

48. It is evident that the beams have been recently displaced because there is obvious discoloration along portions of the beam that runs along the ridge of the cathedral ceiling in the living room of the Home.

49. Plaintiffs communicated that the exposure of these unstained parts of the beam coincided with the blast.

50. And structural engineer Robert C. Zahl informed that such evidence corroborates the types of movement that results from downward force that a blast wave moving over the top of the roof would create.

51. However, Defendant unreasonably ignored or failed to fairly evaluate the evidence about the beams and have provided no payment for such damage.

52. Defendant, throughout its handling of the Claim, unreasonably ignored or

failed to evaluate fairly evidence of movement about structures of the Home caused by the blast.

53. As indicated in reports of structural engineer Robert Zahl, the type of damage evidenced throughout the Home (but denied by Farmers) is consistent with being caused by the blast forces.

54. However, Defendant has unreasonably failed to account for and rule out the most likely cause of how the numerous cracks in the brick veneer and other cracks in walls, ceilings, the fireplace, and other parts of the Home came about, i.e., the explosion. Rather Defendant wrongfully speculates about other causes for such damage, and Defendant did not fairly and reasonably attempt to rule out that the blast forces were the cause of such damage about the Home.

55. By ignoring such evidence and/or failing to reasonably incorporate it into its decisions about the Claim, Defendant has wrongfully denied payment for much of the "Marring" and "movement, settling, cracking, bulging, shrinking, heaving or expanding" loss and damage about Plaintiffs' Home.

56. Defendant is stuck with its denial letters. That is, defendant is not allowed to "mend-the-hold" or bring up new information to argue or assert additional or different reasons as to why they failed to make payment for certain loss or damage as a result of the explosion.

57. As a result of Defendant Farmers breach of the Policy and its breaches of the

duty of good faith and fair dealing, plaintiffs have incurred financial and severe emotional distress, as well as have lost sleep, suffered anxiety, endured distress, and felt embarrassment due to Farmers wrongful conduct.

58. The unreasonable conduct of Defendant Famers in the handling of the Plaintiffs' Claim was willful and wanton or committed with such a reckless disregard to the rights of the Plaintiffs that punitive damages are warranted.

## Prayer

59. Wherefore, having properly plead, Plaintiffs hereby seek judgment in their favor and against Defendant Farmers in an amount in excess of $75,000.00, for actual (breach of contract, breach of bad faith, and deceit) and punitive damages, costs, interest, attorney fees, and any other relief that the Court may during this lawsuit find appropriate.

Respectfully submitted,

*/s/ Timothy B. Hummel*
Timothy B. Hummel, OBA # 16511
500 West Main Street, Suite 102
Oklahoma City, Oklahoma 73102
(405) 319-0300 telephone
(405) 319-0350 facsimile
tim@hummellawoffice.com
Attorney for Plaintiff